

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| ERIC RAYMOND WILLIAMS, | :: | PRISONER CIVIL RIGHTS |
| GDC NO. 438229, | :: | 42 U.S.C. § 1983 |
| Plaintiff, | :: | |
| | :: | |
| v. | :: | |
| | :: | |
| A. SLACK, Correctional Officer II; et | :: | CIVIL ACTION NO. |
| al., | :: | 1:08-CV-2920-TCB |
| Defendants. | :: | |

## ORDER AND OPINION

Plaintiff, presently confined in the Valdosta State Prison in Valdosta, Georgia,

filed this <u>pro se</u> civil rights action. This matter is before the Court for consideration

of Defendants Arzialous Slack, Joseph McCard[1], and Eric Jackson's motion to exceed

page limit (Doc. 86), Defendants' motions for summary judgment (Docs. 87-89), and

Plaintiff's request for a pretrial settlement conference (Doc. 93). As an initial matter,

Defendants Slack, McCard, and Jackson's motion to exceed page limit (Doc. 86) is

**GRANTED**.

---

[1] Plaintiff incorrectly identifies Officer McCard as "McCord."

# I. FACTUAL SUMMARY

Defendants have submitted Statements of Material Facts supported by affidavits, Plaintiff's deposition testimony, and other documentary evidence, including Plaintiff's medical records. (Docs. 87-89, Statements of Material Facts; Doc. 90, Exs. A-M; Doc. 92, Attach. 1 to Ex. J). Plaintiff, however, has failed to file a response to Defendants' Statements of Material Fact, as required by Local Rule 56.1B.(2)a. Accordingly, the Court deems Defendants' undisputed facts to be admitted. See LR 56.1 B.(2)a.(2), NDGa; Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008) (stating, "The proper course in applying Local Rule 56.1 at the summary judgment stage is for a district court to disregard or ignore evidence relied on by the respondent-but not cited in its response to the movant's statement of undisputed facts-that yields facts contrary to those listed in the movant's statement").

On July 31, 2007, Officer Slack was assigned to the A-Dorm, units A-1 and A-2, for the second shift at Phillips State Prison ("PSP"). (Ex. A ¶ 4). Officers Jones, Carr, and McCard were assigned to other areas of PSP. (Exs. B ¶ 3, C ¶¶ 4-6, D ¶ 3). Officer Jackson, however, was not on duty at PSP on July 31, 2007. (Ex. G ¶¶ 3-5).

In accordance with standard prison procedure, Officer Slack conducted a random search of Plaintiff's cell at approximately 9:40 p.m. (Ex. A ¶¶ 7, 9). Such

2

searches are designed to, among other things, uncover contraband. (Id. ¶ 9). At that time, there were roughly 56 inmates housed in the A-2 unit, where Plaintiff's cell was located. (Id. ¶¶ 5, 7). When Officer Slack began to search Plaintiff's cell, the other inmates in A-2 were not restricted to their cells, but were out "in various places on the range." (Id. ¶ 8).

On entering Plaintiff's cell, Officer Slack saw Plaintiff, who was sitting up in his bed, "make a sudden movement with his left hand," but did not place anything on the table. (Ex. A ¶ 10). This action caused Officer Slack to suspect that Plaintiff was hiding something, and thus, Officer Slack told Plaintiff that he was going to search the cell. (Id. ¶ 11). While standing just inside the door to the cell, Officer Slack ordered Plaintiff "to get up and walk towards the (inmate's) left side of the cell." (Id.). When Plaintiff stood up, Officer Slack noticed a cell phone on Plaintiff's bunk and went towards the bunk to secure the phone, but Plaintiff grabbed the phone and charged Officer Slack in an attempt to get to the door of the cell. (Id. ¶ 12). Officer Slack stood his ground and locked arms with Plaintiff when Plaintiff ran into him. (Id. ¶ 13). Officer Slack was trying to both stay upright and prevent Plaintiff from exiting his cell so that he could throw the contraband phone onto the range where other inmates might take possession of it or hide it for him. (Id. ¶¶ 13, 15). Because no

3

other officers were present, it was important for Officer Slack's safety that he stay upright to prevent Plaintiff from being on top of him on the ground, which would create a situation where another inmate could potentially take advantage of his compromised position. (Id. ¶ 14).

During the struggle, Officer Slack and Plaintiff faced each other, chest to chest, and Officer Slack was able to use the radio mic on his shoulder to call for assistance. (Ex. A ¶ 16). As the struggle continued, Officer Slack and Plaintiff reached the doorway of the cell, Plaintiff threw the contraband phone out of the cell with his right hand, and Officer Slack did not see what happened to the phone, which was not recovered when the range was later searched. (Id. ¶ 17). On hearing another officer enter the unit in response to his radio call, Officer Slack tripped Plaintiff to the ground in order to handcuff Plaintiff and regain control. (Id. ¶ 18). Plaintiff landed on his back and maintained his hold on Officer Slack, who landed on top facing Plaintiff. (Id.).

Officer Jones was the first officer to arrive in response to Officer Slack's call for assistance. (Ex. A ¶ 19, Ex. B ¶ 3, Ex. H at 21). Officer Jones saw Officer Slack on the floor struggling with Plaintiff and immediately ran to Plaintiff's cell. (Ex. B ¶ 3). Officers Jones and Slack grabbed Plaintiff's arms and upper torso to hold him

AO 72A
(Rev.8/82)

still, rolled him over to his stomach, and handcuffed his wrists behind his back. (Ex. A ¶¶ 19-20, Ex. B ¶¶ 4, 7, Ex. H at 22). Neither Officer Slack nor Officer Jones punched, kicked, or hit Plaintiff; rather, they applied the force necessary to regain and maintain control of Plaintiff. (Ex. A ¶¶ 19, 22-23, Ex. B ¶¶ 4-6).

By the time Plaintiff was handcuffed, Officers Carr, McCard, and Ronald Brown had arrived on the scene in response to Officer Slack's call for assistance. (Ex. A. ¶ 21, Ex. B ¶ 8, Ex. C ¶¶ 5-8, Ex. D ¶¶ 4-5, Ex. F ¶¶ 4-5). Believing that Officers Slack and Jones had Plaintiff under control, Officers McCard and Brown, as well as several other officers, began securing the A-2 unit. (Ex. D ¶ 7, Ex. F ¶ 10). Plaintiff continued to kick, thrash around, and generally act combative and, thus, was placed in leg restraints. (Ex. A ¶ 21, Ex. B ¶ 8, Ex. C ¶¶ 8-9). None of the responding officers dragged, stomped, punched, kicked, or hit Plaintiff, but they applied the force necessary to regain and maintain control over Plaintiff. (Ex. A. ¶¶ 22-23, Ex. B ¶¶ 13-14, Ex. C ¶¶ 20-21, Ex. D ¶ 8, Ex. F ¶ 11).

After Plaintiff was secured in handcuffs and leg restraints, he had to be placed in administrative segregation to await a disciplinary hearing due to his violations of prison rules, namely his "assaultive and insubordinate behavior" towards Officer Slack and possession of a cell phone. (Ex. A ¶ 24, Ex. C ¶ 18). During the

5

altercation, the other inmates in the A-2 unit, who remained unrestrained and outside their cells, began screaming and threatening the officers. (Ex. C ¶ 11). Thus, the situation was quickly escalating and becoming increasingly volatile and dangerous. (Id.). Plaintiff's actions prevented the responding officers from focusing their full attention on other inmates, who could have attacked the officers or the fully restrained Plaintiff. (Ex. A ¶¶ 26-27, Ex. C ¶ 12, Ex. D ¶ 6, Ex. F ¶¶ 8-9). Accordingly, for the safety of Plaintiff and the officers, they had to remove Plaintiff from the A-Dorm as quickly as possible and place the other inmates in their cells. (Id.).

Because Plaintiff initially continued to struggle and refused to walk on his own, four officers, including Officers Slack, Jones and Carr, were forced to grab a limb and carry Plaintiff down the stairs. (Ex. A ¶¶ 25, 28, Ex. B ¶¶ 9-10, Ex. C ¶ 13). Plaintiff continued "bucking" his body, kicking his legs, and generally resisting the officers' attempt to carry him. (Ex. A ¶ 30, Ex. B ¶ 10, Ex. C ¶ 14). Plaintiff refused to comply with the officers' verbal instructions to stop bucking. (Id.). Due to Plaintiff's bucking and Officer Slack's pre-existing hand injury that was aggravated during this altercation, Officer Slack lost his grip on Plaintiff about three-quarters of the way down the stairs. (Ex. A ¶¶ 29-30, Ex. B ¶ 10, Ex. C ¶ 14, Ex. L ¶¶ 8-10). The officers lost their balance, and Plaintiff's chest and stomach struck the last two to three steps

AO 72A
(Rev.8/82)

of the stairs. (Ex. A ¶ 31, Ex. B ¶ 10, Ex. C ¶ 14). Plaintiff was neither purposefully dropped nor thrown down the stairs. (Ex. A ¶ 31, Ex. B ¶ 10).

As the situation in the A-Dorm continued to intensify, Officer Carr and another officer responding to Officer Slack's call for assistance picked Plaintiff up from the bottom of the stairs and escorted him out of the dorm. (Ex. A ¶ 32, Ex. B ¶¶ 11-12, Ex. C ¶¶ 15-16, Ex. E ¶ 6, Ex. F ¶ 7). Officer Slack then left the A-2 unit and locked down the A-1 unit. (Ex. A ¶ 33). At no time did Officer Slack or any other responding officer hit, punch, kick, stomp, throw, or drag Plaintiff. (Id. ¶ 34).

On August 1, 2007, Nurse Sarah Brown and a physician's assistant examined Plaintiff. (Ex. I ¶ 7, Ex. J ¶¶ 7, 9). There was no evidence of any injury to Plaintiff's head, neck, or face. (Ex. I ¶ 9, Ex. J ¶¶ 8-9). Rather, Plaintiff suffered abrasions on his stomach, slight swelling of his left shoulder, ankle, and knee, and a contusion on his left side near his wrist. (Ex. I ¶ 9, Ex. J ¶ 9). Although Nurse Brown believed that Plaintiff exaggerated his pain level, she referred him to a physician's assistant who ordered x-rays, gave Plaintiff ibuprofen, and instructed him to return to the clinic if his condition worsened. (Ex. I ¶¶ 10-11, Ex. J ¶ 10). The x-ray of Plaintiff's chest revealed no sign of fracture or other injury; and although the x-ray of his left ribs showed a possible non-displaced fracture, such a diagnosis could not be confirmed.

7

(Ex. J ¶ 12). However, after reviewing a third x-ray of Plaintiff's left rib area, a radiologist found no evidence of a recent fracture or other significant bony abnormality to Plaintiff's ribs. (Id. ¶¶ 13-14, 16-18). By August 28, 2007, nearly a month after the incident, there was no longer any sign of injury to Plaintiff's leg, back, or ribs, and Plaintiff had stopped taking the recommended pain reliever. (Ex. J ¶ 19).

## II. ANALYSIS

Defendants argue that: (1) they did not violate Plaintiff's constitutional rights because the force used was applied in a good faith effort to maintain or restore discipline; (2) Plaintiff's account of the incident is not supported by the evidence; and (3) they are entitled to qualified immunity. (Doc. 87, brief at 8-20; Doc. 88, brief at 8-16; Doc. 89, brief at 12-31). Additionally, Officer Jackson argues that he is entitled to judgment as a matter of law because he was not on duty at the time of the incident and, thus, did not participate. (Doc. 89, brief at 14-15).

Plaintiff responds that Officer Slack could have avoided the entire incident by locking Plaintiff's cell and calling his supervisor before beginning the search. (Doc. 96 at 4). Plaintiff maintains that Officer Slack violated prison procedure when he entered the cell of a "verbally or physically assaultive" inmate without prior supervisor approval. (Id. at 7). Plaintiff contends that because "cell phones have

8

become the new fashion in the jails and prisons . . . Officer Slack had to bring an additional demeanor in his approach to Plaintiff," and his failure to do so provoked Plaintiff's resentment.  (Id. at 10).  Plaintiff also faults (1) Officer Jones for not immediately handcuffing Plaintiff's ankles and (2) all of the officers, who allegedly knew about Officer Slack's preexisting hand injury, for not using a medical stretcher to transport him to administrative segregation.  (Id. at 4-6).  Finally, Plaintiff asserts that, had he been examined by an orthopedic specialist, that doctor would have found the injury to his rib-cage[2].  (Id. at 8).

Plaintiff also has filed a request for a pretrial settlement conference. (Doc. 93). Defendants respond that Plaintiff's request is premature due to the pending summary judgment motions.  (Doc. 94).

---

[2] It appears that Plaintiff is attempting to raise a new claim that prison medical staff were deliberately indifferent to his serious medical needs when they failed to send him to an orthopedic specialist. (Doc. 96 at 9).  While  Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be freely given when justice so requires, "[a] district court need not . . . allow an amendment . . . where amendment would be futile." Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001).  In this case, such an amendment would be futile because Plaintiff's new claim is purely speculative, and "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability" for a § 1983 deliberate indifference claim. Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995).

AO 72A
(Rev.8/82)

**A.**     <u>**Summary Judgment Standard**</u>

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2).  The party seeking summary judgment bears the initial burden of demonstrating that no dispute as to any material fact exists. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  The moving party's burden may be discharged by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support [an essential element of] the nonmoving party's case." <u>Id.</u> at 325. In determining whether the moving party has met this burden, the district court must "view the evidence and all factual inferences . . . in the light most favorable to the party opposing the motion." <u>Burton v. City of Belle Glade</u>, 178 F.3d 1175, 1187 (11th Cir. 1999) (internal quotation omitted).

Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  The nonmovant may not rest upon mere allegations or denials contained in his pleadings. <u>Anderson v. Liberty Lobby,</u>

Inc., 477 U.S. 242, 249 (1986).  Additionally, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position" is insufficient to defeat summary judgment.  Id. at 252.  Rather, the court must determine "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict."  Id.

## B.   **Officer Jackson**

Officer Jackson states that he was not on duty at PSP on July 31, 2007, when the events at issue occurred.  (Ex. G ¶¶ 3-5).  Plaintiff does not dispute this fact and admitted during his deposition that he may have confused Officer Jackson with Officer Brown.   (Ex. H at 163-64).   Accordingly, Officer Jackson is entitled to summary judgment because he was not involved in the incident giving rise to this lawsuit.

## C.   **Excessive Force**

"The eighth amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to a[n] 'unnecessary and wanton infliction of pain.'"  Bennett v. Parker, 898 F.2d 1530, 1532 (11th Cir. 1990).  In determining whether the use of physical force was cruel and unusual, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or

11

maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992).  Factors to be considered in this inquiry are: "a) the need for the application of force; b) the relationship between the need and the amount of force that was used; c) the extent of the injury inflicted upon the prisoner; d) the extent of the threat to the safety of staff and inmates; and e) any efforts made to temper the severity of a forceful response." Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009).  Courts "give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." Id.

## 1.    The Need for Application of Force

The use of force is necessary when an inmate creates a disturbance or becomes insubordinate. Bennett, F.2d at 1533.  In this case, Plaintiff had a contraband cell phone and acted aggressively and insubordinately when Officer Slack moved to secure the phone. (Ex. A ¶¶ 12-18).  Officer Slack used force to confiscate the cell phone, protect himself, and restrain Plaintiff. (Id.).  Seeing Officer Slack struggling on the ground with Plaintiff, Officer Jones used force to help obtain control of and handcuff Plaintiff. (Ex. A ¶¶ 19-20, Ex. B ¶¶ 3-4, 7).  Once restrained, Plaintiff continued his insubordinate and uncooperative conduct and had to be carried out of the building. (Ex. A ¶¶ 21, 25, 28, 30, Ex. B ¶¶ 8-10, Ex. C ¶¶ 8-9, 13-14 ).  Plaintiff's actions and

12

Officer Slack's pre-existing hand injury caused the officers to inadvertently drop Plaintiff. (Ex. A ¶¶ 29-30, Ex. B ¶ 10, Ex. C ¶ 14, Ex. L ¶¶ 8-10). The officers' use of force was necessary to maintain order and restore discipline during a volatile and dangerous situation in the A-Dorm. (Ex. A ¶¶ 26-27, 32, Ex. C ¶¶ 11-12, 15-16, Ex. D ¶ 6, Ex. E. ¶ 7, Ex. F ¶¶ 7-9). Plaintiff does not dispute that some force was necessary in this situation. (See generally Doc. 96).

2.      **The Relationship Between the Need and Amount of Force Used**

The use of restraints is proper when responding officers are "faced with a volatile situation which require[s] them to act promptly and effectively to prevent any further spreading of the disturbance." Williams v. Burton, 943 F.2d 1572, 1575 (11th Cir. 1991) (holding that the use of four-point restraints was necessary to prevent an inmate from injuring himself or the responding officers). Defendants contend that the amount of force used by the responding officers was necessary to regain and maintain control over Plaintiff. (Ex. A. ¶¶ 19, 22-23, Ex. B ¶¶ 4-6, 13-14, Ex. C ¶¶ 20-21, Ex. D ¶ 8, Ex. F ¶ 11). In his response to Defendants' motions, Plaintiff does not answer this contention. (See Doc. 96). Rather, Plaintiff faults Defendants for not (1) obtaining a supervisor's permission before entering his cell, (2) immediately handcuffing his ankles, or (3) using a medical stretcher to transport him to

13

administrative segregation.  (Id. at 4-7, 10).  This Court, however, cannot substitute

its judgment "for that of officials who have made a considered choice," but "must

determine whether the evidence goes beyond a mere dispute over the reasonableness

of a particular use of force or the existence of arguably superior alternatives." Whitley

v. Albers, 475 U.S. 312, 322 (1986).

### 3.   The Extent of Injury to Plaintiff

Although de minimis injuries may form the basis of an Eighth Amendment

excessive force claim, the extent of a plaintiff's injury is relevant to determine whether

the use of force was necessary and "may also provide some indication of the amount

of force applied." Wilkins v. Gaddy, ___ U.S. ___, 130 S. Ct. 1175, 1178 (2010).

Plaintiff's injuries, which had completely resolved within a month of the incident,

included some minor abrasions, swelling of his left shoulder, ankle, and knee, and a

contusion on his left side.  (Ex. I ¶ 9, Ex. J ¶¶ 9, 19).  Plaintiff's contention that an

orthopedic specialist would have found a more significant injury is entirely

speculative and not supported by any evidence.  See Cordoba v. Dillard's, Inc., 419

F.3d 1169, 1181 (11th Cir. 2005) ("[s]peculation does not create a *genuine* issue of

fact") (emphasis in original).  Accordingly, the Court finds that Plaintiff's de minimis

injuries indicate that the amount of force applied was minimal.

14

**4.     The Extent of the Threat to the Safety of Staff and Inmates**

While Officer Slack was initially preoccupied with trying to regain control of and restrain Plaintiff, another inmate could have taken the opportunity to attack him. (Ex. A ¶ 14).  During the fight, the other inmates in the A-2 unit, who remained unrestrained and outside their cells, began screaming and threatening the officers. (Ex. C ¶ 11).   After Plaintiff was restrained, his continued insubordinate and uncooperative conduct prevented the responding officers from focusing their full attention on other inmates, who could have attacked the officers or the fully restrained Plaintiff.  (Ex. A ¶¶ 26-27, Ex. C ¶ 12, Ex. D ¶ 6, Ex. F ¶¶ 8-9).  Plaintiff does not dispute these facts.  (See Doc. 96).  Thus, the Court finds that Plaintiff's actions created a serious threat to his own safety, as well as the officers and inmates present.

**5.     The Efforts Made to Temper the Severity of a Forceful Response**

Defendants made several attempts to temper the severity of their response. When Officer Slack began the search of Plaintiff's cell, he simply asked Plaintiff to step away from the area he intended to search.  (Ex. A ¶ 11).  Once Plaintiff charged Officer Slack, he merely grabbed Plaintiff to prevent him from leaving the cell or throwing the phone.  (Id. ¶¶ 12-13).  In order to regain control of Plaintiff without risking his own safety, Officer Slack only tripped Plaintiff when he knew another

15

officer had arrived on the scene to help secure Plaintiff. (Id. ¶¶ 14, 18). The officers gave Plaintiff the opportunity to walk down the stairs, but he refused. (Ex. A ¶¶ 25, 28, Ex. B ¶¶ 9-10, Ex. C ¶ 13). Moreover, while going down the stairs, Plaintiff ignored the officers' verbal instructions to stop bucking. (Ex. A ¶ 30, Ex. B ¶ 10, Ex. C ¶ 14). This undisputed evidence shows that Plaintiff simply resisted the opportunities that the officers provided him to prevent further use of force.

Having carefully considered all five factors and the undisputed record evidence, the Court finds that Defendants did not violate Plaintiff's Eighth Amendment rights. Because this Court is granting summary judgment to Defendants, Plaintiff's request for a pretrial settlement conference (Doc. 93) is denied as moot.

## III.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' motions for summary judgment (Docs. 87-89) are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's request for a pretrial settlement conference (Doc. 93) is **DENIED** as moot.

The Clerk of Court is **HEREBY DIRECTED** to close this case.

16

AO 72A
(Rev.8/82)

**IT IS SO ORDERED** this ___21st___ day of ___June___, 2010.

_(signature)_

TIMOTHY C. BATTEN, SR.
UNITED STATES DISTRICT JUDGE

17